## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>In re:</td><td>)</td><td>Chapter 11</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>CLOVER TECHNOLOGIES GROUP, LLC, <em>et al.</em>,[1]</td><td>)</td><td>Case No. 19-12680 (___)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Debtors.</td><td>)</td><td>(Joint Administration Requested)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## DEBTORS' MOTION FOR ENTRY
## OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING POSTPETITION USE OF
## CASH COLLATERAL, (II) GRANTING ADEQUATE
## PROTECTION TO THE SECURED PARTIES, (III) MODIFYING
## THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>" and together with their non-debtor affiliates, the "<u>Company</u>") respectfully state as follows in support of this motion:[2]

### <u>Relief Requested</u>

1.     The Debtors seek entry of an interim order, substantially in the form attached hereto as **<u>Exhibit A</u>**, and a final order (the "<u>Interim Order</u>" and "<u>Final Order</u>," respectively, and together, the "<u>Cash Collateral Orders</u>"), (a) authorizing the Debtors to use "<u>Cash Collateral</u>," as defined in section 363(a) of the Bankruptcy Code, (b) granting adequate protection, solely to the extent

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Clover Technologies Group, LLC (9236); 4L Holdings Corporation (0292); 4L Technologies Inc. (5035); Clover Ithaca Properties, LLC (9236); Refurb Holdings, LLC (1230); Clover Wireless, LLC (0313); and Valu Tech Outsourcing, LLC (3563).  The location of the Debtors' service address in these chapter 11 cases is: 5850 Granite Parkway, Suite 720, Plano, Texas 75024.

[2]     A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Andrew Buck, Chief Financial Officer of Clover Wireless, LLC in Support of the Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on December 16, 2019 (the "<u>Petition Date</u>") and incorporated by reference herein.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration or in the Plan, as applicable.

provided in the Cash Collateral Orders, to the Secured Parties (as defined below), (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Cash Collateral Orders, and (d) scheduling a final hearing (the "Final Hearing") to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 6007, and Local Rules 2002-1 and 9013-1.

## Background

5.       The Debtors collect and recycle electronic devices and provide aftermarket management services for mobile device carriers, manufacturers, retailers, insurance providers and enterprise businesses.  Formed through organic growth and strategic acquisitions, the Debtors and their non-debtor affiliates operate repair centers in North America and abroad and provide services

in over 120 countries.  The Company's comprehensive services portfolio includes a full suite of returns management, customized trade-in and buyback programs, and device re-marketing through multiple sales channels, and their repair and reclamation services restore devices to high-quality condition while avoiding waste and maximizing value for their customers.

6.       Prior to the Petition Date, the Debtors engaged in extensive discussions with the Consenting Stakeholders.  These extensive, good faith, arm's-length discussions culminated in the execution of the Restructuring Support Agreement, which serves as the foundation for the Plan and has the support of the vast majority of the Debtors' funded debt holders.  The Plan provides for a comprehensive restructuring of the Debtors' prepetition funded debt obligations, leaves General Unsecured Claims unimpaired, preserves the going-concern value of the Debtors' business, maximizes creditor recoveries, and protects the jobs of the Company's invaluable employees.  The transactions contemplated by the Restructuring Support Agreement and Plan will enable the Debtors to substantially deleverage their balance sheet and position their business for stability and success after emergence from chapter 11.

7.       On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Debtors Have an Immediate Need for Use of Cash Collateral

8.       The Debtors require immediate access to liquidity to ensure that they are able to continue operating their business during these chapter 11 cases, preserve the value of their estates

3

for the benefit of all parties in interest, and pursue a value-maximizing restructuring transaction. Without prompt access to Cash Collateral, the Debtors would be unable to satisfy employee compensation obligations, satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, and fund the administration of these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

9.        During these chapter 11 cases, the Debtors will need the cash generated from their operations to satisfy payroll obligations, continue satisfying obligations under their customer contracts, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of the Debtors' business.  The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their business during the pendency of the chapter 11 cases.  As part of the Restructuring Support Agreement, the Debtors and the Consenting Term Loan Lenders have negotiated the terms of the Debtors' consensual use of Cash Collateral as set forth herein.

### Concise Statement of Material Terms of the Interim Order

10.        By this Motion, the Debtors seek entry of the Cash Collateral Orders. The provisions of the Interim Order were extensively negotiated with the Consenting Term Loan Lenders and are the most favorable terms that the Debtors were able to obtain under the circumstances.  Approval of this Motion will ensure that the Debtors are able to maintain their operations, pursue and achieve a successful restructuring by implementing the Plan, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors request that the Court enter the Interim Order approving the use of Cash Collateral.

11.     The below chart contains a summary of the material terms of the proposed use of Cash Collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b).

| Summary of Material Terms | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | Wilmington Savings Fund Society, FSB, as Agent for all Term Loan Lenders (collectively, the "Secured Parties"). | Preamble, ¶ E ¶ 4 |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii); Del. Bankr. L.R 4001-2(a)(i) | Subject to the provisions of the Interim Order (including the Carve Out (as defined therein)), and in accordance with the Budget, Cash Collateral may be used during the Specified Period by the Debtors to:  (i) finance their working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities, and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Cases, in each case solely to the extent consistent with the Budget. | ¶ 3(b) |
| **Budget** Bankruptcy Rule 4001(b)(1)(B)(ii) | On the final business day of each calendar week following entry of the Interim Order beginning with the second full week following the Petition Date, the Debtors will provide the Agent and counsel to the supporting Secured Parties with an updated Budget for the subsequent 13-week period.  The initial Budget and each subsequent Budget shall be in form and substance acceptable to the supporting Secured Parties and each such subsequent Budget shall be deemed to constitute the "Budget" for purposes of the Interim Order unless counsel to the supporting Secured Parties has notified counsel for the Debtors in writing within five (5) business days following delivery thereof to the contrary.  In the event of such notification, the prior approved Budget shall remain in full force and effect.  On the final business day of each calendar week following entry of the Interim Order beginning with the second full week following the Petition Date, the Debtors will also provide to the Agent and counsel to the supporting Secured Parties a Budget variance report/reconciliation (the "Budget Variance Report") setting forth in reasonable detail actual cash receipts and disbursements for the prior week for both the Debtors (collectively, and including, for the avoidance of doubt, the Valu Tech Non-Debtor Affiliates the "Debtor Group"), and the Debtors' non-Debtor affiliates (collectively, the "Non-Debtor Group") and all variances, in each case on both an individual line item basis and an aggregate basis, as compared to the previously delivered Budget on a cumulative weekly basis commencing with the second full week after the Petition Date, together with a statement confirming compliance with the Budget Covenants set forth below.  The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance.  The Debtors shall ensure that at no time any of the following occur (collectively, the "Budget Covenants"): (i) a positive variance of ten percent (10%) or more from the aggregate of operating disbursements, as set forth in the Budget, to | ¶ 4(e) |

| Summary of Material Terms | | Location |
|---|---|---|
| | be tested and reported on a weekly basis, with the initial testing date occurring (x) with respect to the Debtor Group, on the second full week following the Petition Date and (y) with respect to the Non-Debtor Group, on the fourth full week following the Petition Date; (ii) a negative variance of fifteen percent (15%) (or, beginning on the fourth full week following the Petition Date, ten percent (10%)) or more from the total receipts , as set forth in the Budget, to be tested and reported on a weekly basis, with the initial testing date occurring (x) with respect to the Debtor Group, on the second full week following the Petition Date and (y) with respect to the Non-Debtor Group, on the fourth full week following the Petition Date; or (iii) any Debtor makes any disbursement not contemplated by the Budget (after giving effect to the foregoing variances, and including any transfers of cash from any Debtor to any member of the Non-Debtor Group not expressly authorized under the Budget) without the prior written consent of the supporting Secured Parties. | |
| **Termination Date** Bankruptcy Rule 4001(b)(1)(B)(iii); Del. Bankr. L.R. 4001-2(a)(ii) | The Debtors are authorized to use Cash Collateral in accordance with the Budget for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined in the Interim Order), (ii) the effective date of a confirmed chapter 11 plan in the Cases, and (iii) the date that is three (3) months after the Petition Date. | ¶ 3(a) |
| **Termination Events/ Events of Default** Bankruptcy Rule 4001(b)(1)(B)(iii); Del. Bankr. L.R. 4001-2(a)(ii) | The occurrence and continuance of any of the following events, unless waived in writing by the Agent (acting at the direction of the requisite Secured Parties), shall constitute an event of default (collectively, the "Events of Default"):<br><br>• the Debtors shall have filed a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to the Interim Order or approved by the Agent (acting at the direction of the requisite Secured Parties) in writing;<br><br>• the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the Agent (acting at the direction of the requisite Secured Parties);<br><br>• the entry of a final order by the Court, other than the Interim Order or the Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, except as approved by the Agent in writing;<br><br>• the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;<br><br>• the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against the Agent or any of the Secured Parties relating to the Term Loan Obligations or the Collateral, including any proceeding seeking to avoid or require repayment of | ¶ 8 |

| Summary of Material Terms | Location |
|---|---|
| | |

<table>
<tr><td></td><td>any payments to the Agent or any supporting Secured Party hereunder;</td><td></td></tr>
</table>

- the reversal, amendment, supplement, vacatur, or modification of the Interim Order without the express prior written consent of the Agent (acting at the direction of the requisite Secured Parties);

- the dismissal of any of these Cases or conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

- the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

- the failure to make any material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Agent;

- the failure by the Debtors to perform, in any material respect (or, in the case of Paragraph 3(c) and the Budget Covenants in Paragraph 4(d), in all respects), any of the terms, provisions, conditions, or obligations under the Interim Order; and

- the occurrence of any termination event set forth in Section 12 (other than a termination pursuant to Sections 12.02(c) or 12.05 thereof) of Restructuring Support Agreement.

| | | |
|---|---|---|
| **Adequate Protection**<br>Bankruptcy Rule 4001(b)(1)(B)(iv); Del. Bankr. L.R. 4001-2(a)(i)(B) | The adequate protection provided to the Administrative Agent and the Secured Parties, includes:<br><br>- **Adequate Protection Liens**:  As adequate protection of the interests of the Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of entry of the Interim Order are deemed to have granted, to the Agent, for the benefit of itself and each of the Secured Parties, additional and replacement continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (together, the "<u>Adequate Protection Liens</u>") all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, payment intangibles, chattel paper, contracts, real and personal property, leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, commercial tort claims, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing and any accessions | ¶ 4 |

| Summary of Material Terms | Location |
|---|---|
| thereto (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral"). | |

- **507(b) Claims**: Solely the extent of any Diminution in Value of the interests of the Secured Parties in the Prepetition Collateral, the Agent, on behalf of itself and the Secured Parties, shall be granted, subject only to the payment of the Carve Out, allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (collectively, the "Superpriority Claim"), which Superpriority Claim shall be an allowed claim against each of the Debtors (jointly and severally), with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in section 503(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 327, 328, 330, 331, 503(b), 507(a) (other than 507(a)(1)), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.

- **Additional Adequate Protection.**

    1. **Fees and Expenses**.  The Debtors are authorized and directed to pay the reasonable and documented fees, costs, and expenses incurred or accrued of:  (i) the Agent; (ii) Blank Rome LLP, as counsel to the Agent, and local counsel retained by the Agent; (iii) Gibson, Dunn & Crutcher LLP and Pachulski Stang Ziehl & Jones, LLP, as counsel to certain supporting Secured Parties; and (iv) Greenhill & Co., LLC, as financial advisor to certain supporting Secured Parties.

    2. **Current Cash Payment of Interest**.    The Debtors are authorized to pay the Agent (for the ratable benefit of the Secured Parties) adequate protection payments in an amount equal to all accrued and unpaid postpetition interest (including default interest) on account of the Term Loan Obligations, in accordance with the terms of the Credit Agreement.

    3. **Reporting**.  The Debtors shall comply with the reporting requirements set forth in Paragraph 4(e) of the Interim Order.

    4. **Access to Records**.  Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Agent and the supporting Secured Parties to have reasonable access to (i) inspect the Debtors' properties and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the Agent and the supporting Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to

| Summary of Material Terms | | Location |
|---|---|---|
| | attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law. | |
| **Carve Out**<br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Del. Bankr. L.R. 4001-2(a)(i)(F) | The Interim Order provides a "Carve Out" of certain statutory fees, allowed professional fees of the Debtors, and Carve Out Reserves, all as detailed in the Interim Order.<br><br>• Carve Out. The "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Agent (acting at the direction of the requisite Secured Parties) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Agent (acting at the direction of the requisite Secured Parties) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and upon termination of the Debtors' right to use Cash Collateral by the Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.<br><br>• Carve Out Reserves. On the day on which a Carve Out Trigger Notice is given by the Agent (acting at the direction of the requisite Secured Parties) to the Debtors with a copy to counsel to the Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize | ¶ 10 |

| Summary of Material Terms | Location |
|---|---|
| all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Agent for the benefit of the Secured Parties, unless the Term Loan Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Agent for the benefit of the Secured Parties, unless the Term Loan Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Loan Documents, or the Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 10, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 10, prior to making any payments to the Agent or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Loan Documents or the Interim Order, following delivery of a Carve Out Trigger Notice, the Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Agent for application in accordance with the Loan Documents.  Further, notwithstanding anything to the contrary in the Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Term Loan Obligations (as defined in the Credit Agreement) or increase or reduce the amount of the Term Loan Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order or in any Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition | |

| Summary of Material Terms | Location |
|---|---|
| | Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Term Loan Obligations.<br><br>• <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.<br><br>• <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Agent or any of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.<br><br>• <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. | |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B)(iii) | **Perfection of Adequate Protection Liens**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such acts as the Agent may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Agent and the Secured Parties under the Interim Order; and (d) subject to the Carve Out, authorize the Debtors to pay, and the Agent and the Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order; <u>provided</u> that, during the Remedies Notice Period (as defined herein), the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect.<br><br>**Binding Effect; Successors and Assigns**.  Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of the Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Agent, the Secured Parties, all other creditors of any of the Debtors, the Committee, or any other Court-appointed committee appointed in any Cases, and all other parties in interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of any inconsistency between the provisions of the Interim Order and the Loan Documents, the provisions of the Interim Order shall govern and control.  Any | ¶¶ 5, 20 |

| Summary of Material Terms | Location |
|---|---|
| | payments to be made by any of the Debtors under any order (including any "first day" order) shall be made in accordance with the Interim Order. | |
| **Stipulations of the Debtors**<br>Del. Bankr. L.R. 4001-2(a)(i)(B) | The Interim Order contains certain stipulations by the Debtors, among other things, that:<br><br>• **Term Loans**. Under that certain credit agreement dated as of May 8, 2014 by and among 4L Holdings Corporation as Holdings, Clover Technologies Group, LLC and 4L Technologies Inc. as Borrower (collectively, the "<u>Borrower</u>"), and the Secured Parties; such credit agreement, as amended, supplemented, or otherwise modified from time to time, the "<u>Credit Agreement</u>", and together with the other "Loan Documents" (as defined in the Credit Agreement), the "<u>Loan Documents</u>"), the Borrowers requested and the Lenders provided term loans (the "<u>Term Loans</u>") in an aggregate principal amount of $715,000,000.<br><br>• On July 18, 2014, pursuant to a First Amendment and Incremental Joinder Agreement, the Borrowers added an incremental Term Loan facility in an aggregate principal amount of $110,000,000.<br><br>• As of the Petition Date, the Debtors (the "<u>Debtor Obligors</u>") were jointly and severally indebted to the Secured Parties pursuant to the Loan Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $644,101,000 plus accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Credit Agreement) owing under or in connection with the Loan Documents (collectively, the "<u>Term Loan Obligations</u>").<br><br>• **Term Loan Collateral**. In connection with the Credit Agreement, the Debtor Obligors entered into that certain Guaranty and Security Agreement, dated as of May 8, 2014 (as amended, supplemented or otherwise modified from time to time, the "<u>Security Agreement</u>"), by and between 4L Holdings Corporation, as Holdings, the Debtor Obligors, as grantors, and the Agent. Pursuant to the Security Agreement and the other Loan Documents, the Term Loan Obligations are secured by valid, binding, perfected first-priority security interests in and liens (the "<u>Term Loan Liens</u>") on the "Collateral" (the "<u>Prepetition Collateral</u>"), as defined in the Security Agreement, consisting of substantially all of the Debtors' assets, including the Cash Collateral, except as may be set forth in the Security Agreement.<br><br>• **Validity, Perfection, and Priority of Term Loan Liens and Term Loan Obligations**. Each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the Term Loan Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Term Loan Liens are senior in priority over | Preamble, ¶ E |

| Summary of Material Terms | Location |
|---|---|
| any and all other liens on the Prepetition Collateral, except the Existing Liens (as defined below), if any; (c) the Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Term Loan Liens or Term Loan Obligations exist, and no portion of the Term Loan Liens or Term Loan Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Agent, the Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Loan Documents, the Term Loan Obligations, or the Term Loan Liens. | |
| **Binding Effect of the Debtors' Stipulations on Third Parties** Bankruptcy Rule 4001(b)(1)(B)(iii); Del. Bankr. L.R. 4001-2(a)(i)(B) | The stipulations, admissions and waivers contained in the Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their affiliates, and any of their respective successors in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined in the Interim Order) as of the Petition Date. | ¶ 11 |

| Summary of Material Terms | | Location |
|---|---|---|
| **Challenge Period**<br>Bankr. R. 4001(C)(1)(B)<br>Del. Bankr. L.R. 4001-2(a)(i)(B) | The stipulations, admissions and waivers contained in the Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties in interest, including, without limitation, any Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i) before the earlier of (a) two (2) business days before the date of the hearing scheduled to consider confirmation of any chapter 11 plan of reorganization, (b) except as to any Committee, seventy-five (75) calendar days after entry of the Interim Order and (c) in the case of any such adversary proceeding or contested matter filed by any Committee, sixty (60) calendar days after the appointment of such Committee, subject to further extension by written agreement of the Debtors (in their sole discretion) and the Agent (acting at the direction of the requisite Secured Parties), (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"); provided, however, that if, prior to the end of the Challenge Period, the cases convert to chapter 7, or if a chapter 11 trustee is appointed, the trustee shall have the later of the remaining Challenge Period or ten (10) days, (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Agent and the Secured Parties; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Term Loan Obligations (any such claim, a "Challenge"), and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter. | ¶ 11 |
| **506(c) Waiver**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br>Del. Bankr. L.R. 4001-2(a)(i)(C) | Upon entry of the Final Order, subject to the Carve Out, no costs or expenses of administration which have been or may be incurred in these Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Agent or any Lender or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Agent (acting at the direction of the requisite Secured Parties), and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders. Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by, the Agent or any Lender upon, the Collateral. | ¶ 14 |
| **Section 552(b) Waiver**<br>Del. Bankr. L.R. 4001-2(a)(i)(H) | Upon entry of the Final Order, the Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect | ¶ 18 |

| Summary of Material Terms | Location |
|---|---|
| to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral). | |

**Statement Regarding Significant Provisions Pursuant to Local Rule 4001-2(a)(i)**

12.     Local Rule 4001-2(a)(i) requires a debtor to:  (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the proposed cash collateral order.   The provisions described in Local Rule 4001-2, to the extent applicable, are set out at the following sections of the Interim Order (collectively, the "Significant Provisions").

A.      **Provisions that Grant Cross Collateralization (Del. Bankr. L.R. 4001-2(a)(i)(A)).**   The Interim Order does not provide for cross-collateralization, other than replacement liens to the extent of any Diminution of Value as adequate protection consistent with the provisions of the Credit Agreement.

B.      **Validity, Perfection, and Amount of Obligations Securing Prepetition Liens (Del. Bankr. L.R. 4001-2(a)(i)(B)).**   The Debtors acknowledge, agree, admit, and stipulate to various matters, including, the validity, perfection, and priority of the liens securing the Term Loan Obligations. *See* Interim Order ¶ 4. The stipulations set forth in Paragraph E of the Interim Order are binding on the Debtors and any successors thereto. *See id.* at ¶ 11. In compliance with Local Rule 4001-2(a)(i)(B), parties in interest have until the earlier of (i) the date which is two (2) business days before the date of the hearing scheduled to consider confirmation of any chapter 11 plan of reorganization, (ii) except as to any Committee, seventy-five (75) calendar days after entry of the Interim Order and (iii) in the case of  any such adversary proceeding or contested matter filed by any Committee, sixty (60) calendar days after the appointment of such Committee, subject to further extension by written agreement of the Debtors (in their sole discretion) and the Agent (acting at the direction of the requisite Secured Parties); *provided, however,* that if, prior to the end of the Challenge Period, the cases convert to chapter 7, or if a chapter 11 trustee is appointed, the trustee shall have the later of the remaining Challenge Period or ten (10) days. *See id.*

C.      **506(c) Rights (Del. Bankr. L.R. 4001-2(a)(i)(C)).**   The proposed section 506(c) waiver will only be effective after entry of the Final Order. *See* Interim Order, ¶ 14.

D.     **Liens on Avoidance Actions (Del. Bankr. L.R. 4001-2(a)(i)(D)).**  The Adequate Protection Liens shall not attach to any avoidance actions, but shall attach to proceeds or property recovered in respect of such avoidance actions, if any, subject to the Final Order. *See* Interim Order, ¶ 4(a).

E.     **Provisions Deeming Prepetition Debt to be Postpetition Debt (Del. Bankr. L.R. 4001-2(a)(i)(E)).**  The Interim Order does not deem prepetition secured debt to be postpetition debt.

F.     **Carve Out (Del. Bankr. L.R. 4001-2(a)(i)(F)).**  With respect to the Carve Out, the Interim Order assumes no statutory committee is formed. *See* Interim Order ¶ 10.

G.     **Non-Consensual Priming (Del. Bankr. L.R. 4001-2(a)(i)(G)).**  The Interim Order does not provide for non-consensual priming of any secured lien.

H.     **552(b)(1) Rights (Del. Bankr. L.R. 4001-2(a)(i)(H)).**  The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral). *See* Interim Order ¶ 18.

13.     The explanation for the inclusion of the foregoing Significant Provisions, as required by Local Rule 4001-2(a)(i), is that such Significant Provisions were necessary to obtain the Secured Parties' consent to the use of Cash Collateral under the Interim Order and grant of liens thereunder.  In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim Order should be approved.

### The Debtors' Prepetition Indebtedness and Need to Use Cash Collateral

14.     As of the Petition Date, the Debtors' only outstanding funded indebtedness consists of approximately $644.1 million (plus accrued and unpaid interest) of obligations arising under that certain Credit Agreement dated as of May 8, 2014, among 4L Holdings Corporation, as holdings, Clover Technologies Group, LLC and 4L Technologies Inc., as borrowers, the lenders party thereto, and Wilmington Savings Fund Society, FSB as administrative agent (as successor to Bank of America, N.A.) (the "Agent," and together with the Lenders, the "Secured Parties") (the

16

"Term Loan Facility"), which is secured by all Property (as defined in the Credit Agreement) and interests in Property and proceeds thereof now owned or thereafter acquired by any Credit Party, any of their respective Subsidiaries and any other Person who has granted a Lien to Agent, in or upon which a Lien is granted or purported to be granted now or thereafter exists in favor of any Lender or Agent for the benefit of Agent, Lenders and other Secured Parties, whether under the Credit Agreement or under any other documents executed by such persons and delivered to Agent. The Term Loan Facility matures on May 8, 2020 and was originally incurred in the amount of $715 million.   On July 18, 2014, pursuant to a First Amendment and Incremental Joinder Agreement, the Borrowers added an incremental Term Loan facility in an aggregate principal amount of $110 million.

15.    The Debtors use cash on hand and cash flow from operations to fund their working-capital needs, capital expenditures, and for other general corporate purposes.  An inability to use these funds during these chapter 11 cases would eviscerate the Debtors' business operations. Without access to Cash Collateral, the Debtors and their estates would suffer immediate and irreparable harm.

16.    A significant portion of the Prepetition Collateral includes accounts receivables and related assets and proceeds thereof, on which the Secured Parties have liens.  The Debtors' business model is predicated upon their ability to maximize the value of their assets and utilize the proceeds in their business operations.  Thus, the orderly continuation of the Debtors' operations and the preservation of their going concern value is largely dependent upon their ability to regularly convert the Prepetition Collateral into Cash Collateral and use it in their operations.

17.    The Debtors also rely on the encumbered cash generated from their operations to fund working capital, capital expenditures, research and development efforts, and for other general corporate purposes.  During these chapter 11 cases, the Debtors will need current liquidity and

collection of prepetition receivables to satisfy payroll, pay suppliers, meet overhead obligations, and make any other payments that are essential for the continued management, operation, and preservation of the Debtors' businesses.  The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their businesses during the pendency of these cases.

18.    The Debtors seek authority to use Cash Collateral to finance their working capital needs and for any other general corporate purposes and pay related transaction costs, fees, liabilities, and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of the Cases.  Pursuant to the Interim Order, the Debtors' right to use Cash Collateral will commence on the Petition Date and shall remain in effect until the earlier of (a) the expiration of the Remedies Notice Period (as defined in the Interim Order), (b) the effective date of a confirmed chapter 11 plan in the Cases, and (c) the date that is three (3) months after the Petition Date.

19.    The Debtors, with the assistance of their advisors, have developed a 13-week cash flow forecast and Budget for the use of Cash Collateral during the interim period. The Debtors believe that the Budget establishes that the Debtors will have adequate liquidity during the interim period.  The Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Budget is prepared.  The Debtors believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth in the Budget.

**Basis for Relief**

I.     **The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.**

20.     Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[3]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

21.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*,

---

[3]     The Bankruptcy Code defines "cash collateral" as follows:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

22.      The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180—81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.      The Proposed Adequate Protection for the Secured Parties Is Sufficient.

23.      As set forth above, the Debtors propose to provide the Secured Parties with three primary forms of adequate protection (collectively, the "Adequate Protection"):

1.    **Adequate Protection Superpriority Claims**.  Solely the extent of any Diminution in Value of the interests of the Secured Parties in the Prepetition Collateral, the Agent, on behalf of itself and the Secured Parties, shall be granted, subject only to the payment of the Carve Out, allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code.

2.    **Adequate Protection Liens**. The Debtors will provide adequate protection liens to the Secured Parties to the extent of any Diminution in Value of their interests in the Prepetition Collateral from and after the Petition Date, including Cash Collateral, subject to the Carve Out.

3.    **Additional Adequate Protection**.

a.    **Fees and Expenses**.  The Debtors are authorized and directed to pay all reasonable and documented fees, costs, and expenses incurred or accrued of:  (i) the Agent; (ii) Blank Rome LLP, as counsel to the Agent, and local counsel retained by the Agent; (iii) Gibson, Dunn & Crutcher LLP and Pachulski Stang Ziehl & Jones, LLP, as counsel to certain supporting Secured Parties; and (iv) Greenhill & Co., LLC, as financial advisor to certain supporting Secured Parties according to the procedures and requirements set forth in Paragraph 4(c) of the Interim Order.

b.  **Reporting**.    The Debtors shall comply with the reporting requirements set forth in Paragraph 4(e) of the Interim Order.

c.  **Access to Record**.  Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Agent and the supporting Secured Parties to have reasonable access to (i) inspect the Debtors' properties and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the Agent and the supporting Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

24.      The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Secured Parties from any diminution in value to the Collateral during the interim period.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *See also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).  In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Secured Parties is appropriate. The Debtors' proposed Adequate Protection is not only necessary to protect the Secured Parties against any diminution in value, but is also fair and appropriate on an interim basis under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and their estates.

II.     **Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

25.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.  *See* Fed. R. Bankr. P. 4001(b)(2).  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

26.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash.  The Debtors will use cash to, among other things, implement and confirm their chapter 11 plan, continue to operate their business in the ordinary course of business, procure goods and services from vendors of their businesses, pay their employees, and satisfy other working capital needs during these chapter 11 cases.  The Debtors believe that substantially all of their available cash constitutes the Secured Parties' cash collateral, as that term is used by section 363(c) of the Bankruptcy Code.  The Debtors will therefore be unable to proceed with their proposed restructuring, operate their businesses in the near term, or otherwise fund these chapter 11 cases without access to Cash Collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the Debtors' ability to finance their operations and the availability of sufficient working capital and

liquidity to the Debtors through the use of Cash Collateral is vital to preserve and maximize the value of the Debtors' estates.

27.     The Debtors therefore seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

### III.    The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.

28.     The Debtors believe that each of the Significant Provisions is justified and necessary in the context and circumstances of these chapter 11 cases.

### A.    The Scope of the Carve Out Is Appropriate.

29.     The proposed Adequate Protection is subject to the Carve Out.   Without the Carve Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these chapter 11 cases would be restricted.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for the payment of the Clerk of the Court or U.S. Trustee fees and professional fees of the Debtors.

**B.**     **The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate.**

30.     Local Rule 4001-2(a)(i)(B) requires explicit disclosure of provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditor's committee, if any, at least sixty (60) days from the date of its formation to investigate such matters. Here, the Interim Order provides any committee appointed in these chapter 11 cases and other parties in interest with sufficient time within which to investigate and/or challenge the Term Loan Liens and Term Loan Obligations.

31.     As part of the Interim Order, the Debtors agree and stipulate that the Term Loan Liens are valid, binding, perfected, enforceable, first priority liens and security interests against the Prepetition Collateral, subject in each case to the Secured Parties' respective rights in such collateral.  The Interim Order provides that, subject to certain limitations, the committee (if any) or any other party in interest, in each case, with requisite standing, may file an adversary proceeding challenging the validity, enforceability, priority, or extent of the Term Loan Obligations or the Term Loan Liens by the earlier of (i) seventy-five (75) days after the entry of the Interim Order, or, in the case of any official committee is appointed in these chapter 11 cases, sixty (60) days from the date such committee is appointed and (ii) the date that is two (2) business days before the date of the hearing scheduled to consider confirmation of any chapter 11 plan of reorganization (or, should the cases convert to chapter 7 or if a chapter 11 trustee is appointed, as to the trustee the later of the remaining Challenge Period or ten (10) days) to investigate the stipulations set forth in the Interim Order.

**IV.    The Automatic Stay Should Be Modified on a Limited Basis.**

32.    The relief requested herein contemplates a modification of the automatic stay to: (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such acts as the Agent may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Agent and the Secured Parties under this Interim Order; and (d) subject to the Carve Out, authorize the Debtors to pay, and the Agent and the Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.  The Interim Order further provides that, upon the expiration of the Notice Remedies Period (as defined in the Interim Order), the automatic stay will be automatically terminated to permit the Agent, on behalf of itself and for the benefit of each of the Secured Parties, to exercise all its rights and remedies set forth in the Interim Order, the Loan Documents, and as otherwise available at law without further order or application or motion to the Court to foreclose upon and sell all or a portion of the Collateral in order to collect any amounts payable to the Agent and the Secured Parties pursuant to the Interim Order and apply the same to any such obligations.

<u>**The Requirements of Bankruptcy Rule 6003 Are Satisfied**</u>

33.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary

course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. The Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date.

### Waiver of Bankruptcy Rules 6004(a), 6004(h), and 4001(a)(3)

34.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

35.    Nothing contained herein is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

### Notice

36.    The Debtors have provided notice of this motion to the following parties or their respective counsel:  (a) the office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Term Loan Agent; (d) counsel to the Ad Hoc Term Loan Lender Group; (e) the office of the attorneys general

for the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

37.     No prior request for the relief sought in this motion has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and such other relief as the Court deems appropriate under the circumstances.

Dated:  December 17, 2019
Wilmington, Delaware

*/s/ Domenic E. Pacitti*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:      (302) 426-1189
Facsimile:       (302) 426-9193
Email:            dpacitti@klehr.com
                       myurkewicz@klehr.com

-and-

Morton R. Branzburg (*pro hac vice* pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:      (215) 569-3007
Facsimile:       (215) 568-6603
Email:            mbranzburg@klehr.com

-and-

Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                       matthew.fagen@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*