## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLOVER TECHNOLOGIES GROUP, LLC, *et al.*,[1] | ) | Case No. 19-12680 (KBO) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re:  Docket No. 8** |

### INTERIM ORDER
### (I) AUTHORIZING POSTPETITION USE
### OF CASH COLLATERAL, (II) GRANTING ADEQUATE
### PROTECTION TO THE SECURED PARTIES, (III) MODIFYING
### THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of this interim order (this "Interim Order") *inter alia*:

      (i)        authorizing the Debtors' use of Cash Collateral (as defined below);

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Clover Technologies Group, LLC (9236); 4L Holdings Corporation (0292); 4L Technologies Inc. (5035); Clover Ithaca Properties, LLC (9236); Refurb Holdings, LLC (1230); Clover Wireless, LLC (0313); and Valu Tech Outsourcing, LLC (3563).  The location of the Debtors' service address in these chapter 11 cases is: 5850 Granite Parkway, Suite 720, Plano, Texas 75024.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(ii)      granting adequate protection to the Secured Parties (as defined below) for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(iii)     subject to entry of a Final Order (as defined below) and to the extent set forth herein, waiving the Debtors' right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(iv)      vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Secured Parties to implement and effectuate the terms and provisions of this Interim Order; and

(v)       scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a final order (the "Final Order"), and approving the form of notice with respect to the Final Hearing.

The Court (as defined below) having considered the Motion, the First Day Declaration, and the evidence submitted or adduced, and the arguments of counsel made at the hearing held pursuant to Bankruptcy Rule 4001(b)(2) on December 18, 2019 (the "Interim Hearing"); and this Court having heard and resolved or overruled any objections to the relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the Motion need be given; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.      *Petition Date*:  On December 16, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Cases.

B.      *Debtors in Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  The Court has jurisdiction over the Motion, these Cases, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee*.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

E.    _Debtors' Stipulations_.  Without prejudice to the rights of parties in interest as described in Paragraph 11 herein, the Debtors stipulate and agree that (collectively, Paragraphs E(i) through (iii) below are referred to herein as the "Debtors' Stipulations"):

(i)    _Term Loans_.

(a)    Under that certain credit agreement dated as of May 8, 2014 by and among 4L Holdings Corporation as Holdings, Clover Technologies Group, LLC and 4L Technologies Inc. as Borrower (collectively, the "Borrower"), Wilmington Savings Fund Society, FSB as Agent for the Lenders (as hereinafter defined) (the "Agent") (as successor to Bank of America, N.A.), and the lenders party thereto from time to time (the "Lenders", and together with the Agent, the "Secured Parties"; such credit agreement, as amended, supplemented, or otherwise modified from time to time, the "Credit Agreement", and together with the other "Loan Documents" (as defined in the Credit Agreement), the "Loan Documents"), the Borrowers requested and the Lenders provided term loans (the "Term Loans") in an aggregate principal amount of $715,000,000.

(b)    On July 18, 2014, pursuant to a First Amendment and Incremental Joinder Agreement, the Borrowers added an incremental Term Loan facility in an aggregate principal amount of $110,000,000.

(c)    As of the Petition Date, the Debtors (the "Debtor Obligors") were jointly and severally indebted to the Secured Parties pursuant to the Loan Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $644,101,000 _plus_ accrued and unpaid interest with respect thereto and any additional fees, costs, expenses

(including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Credit Agreement) owing under or in connection with the Loan Documents (collectively, the "Term Loan Obligations").

(ii)    *Term Loan Collateral*.    In connection with the Credit Agreement, the Debtor Obligors entered into that certain Guaranty and Security Agreement, dated as of May 8, 2014 (as amended, supplemented or otherwise modified from time to time, the "Security Agreement"), by and between 4L Holdings Corporation, as Holdings, the Debtor Obligors, as grantors, and the Agent.    Pursuant to the Security Agreement and the other Loan Documents, the Term Loan Obligations are secured by valid, binding, perfected first-priority security interests in and liens (the "Term Loan Liens") on the "Collateral" (the "Prepetition Collateral"), as defined in the Security Agreement, consisting of substantially all of the Debtors' assets, including the Cash Collateral, except as may be set forth in the Security Agreement; *provided*, *however*, that, for the avoidance of doubt, any funds in Bank Account (as defined herein) ending in 5966 ("Account 5966") shall not constitute Collateral, Prepetition Collateral, or Cash Collateral (each as defined herein), as the case may be.    Each of the Debtors acknowledges and agrees that Account 5966 is subject to that certain Pledge Agreement dated November 26, 2019 executed by Clover Technologies Group, LLC in favor of PNC Bank, National Association ("PNC") to secure the Debtors' ACH debit and credit card exposure owing to PNC as set forth therein, including, without limitation, pursuant to all commercial credit card

and treasury management agreements between PNC and the Debtors.  PNC's security interest in Account 5966 shall not be impaired or affected in any way by the terms of this Interim Order, and Account 5966 shall continue to secure all of the Debtor's ACH debit and credit card exposure to PNC.

(iii)    *Validity, Perfection, and Priority of Term Loan Liens and Term Loan Obligations*.  Each of the Debtors acknowledges and agrees that:  (a) as of the Petition Date, the Term Loan Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Term Loan Liens are senior in priority over any and all other liens on the Prepetition Collateral, except the Existing Liens (as defined below), if any; (c) the Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Term Loan Liens or Term Loan Obligations exist, and no portion of the Term Loan Liens or Term Loan Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other

6

claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code),

against the Agent, the Secured Parties, or any of their respective affiliates, agents, representatives,

attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or

related to their loans under the Loan Documents, the Term Loan Obligations, or the Term Loan

Liens.

F.    *Adequate Protection*.    To protect the Secured Parties' interests in the

Prepetition Collateral, the Secured Parties are entitled to receive adequate protection for any

diminution in value of their respective interests in the Prepetition Collateral from and after the

Petition Date resulting from the use of Cash Collateral, the use, sale, or lease of

Prepetition Collateral, the imposition of the automatic stay or the granting of a lien (collectively

the "Diminution in Value") pursuant to sections 361, 362, 363, and 364(d) of the Bankruptcy Code.

Pursuant to sections 361, 363, 503(b), and 507(b) of the Bankruptcy Code, as adequate protection,

the Agent, for the benefit of itself and the Secured Parties, shall receive (i) the Adequate Protection

Liens (as defined below), (ii) the Superpriority Claim (as defined below), (iii) the reimbursement

of reasonable and documented professional fees and expenses, (iv) budget and variance reporting,

and (v) access to records.    The adequate protection provided herein and other benefits and

privileges contained herein are necessary to protect the Secured Parties from any Diminution in

Value of their interests in the Prepetition Collateral resulting from the imposition of the automatic

stay and the use of Prepetition Collateral and to obtain the consents and agreements contained

herein, including the agreement of the Agent, on behalf of itself and for the benefit of each of the

Secured Parties, that the adequate protection provided herein is subject and subordinate to the

Carve Out (as defined below).  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) were negotiated in good faith, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.  The Agent and the Secured Parties reserve the right to seek additional adequate protection beyond the adequate protection provided in this Interim Order.

G.    *Cash Receipt Accounts*.  The Debtors acknowledge and agree that:  (i) as of the Petition Date, each of the Debtors has neither opened nor maintains any bank accounts other than the accounts (each, a "Bank Account") listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order"); (ii) all cash receipts received by the Debtors from and after the Petition Date will be continuously deposited into the Operating Accounts ending in 4291 and 9646, Lockbox Account ending in 4347, and Imaging Accounts ending in 4371, 4363, and 4267 (each as defined in the Cash Management Motion[4] and collectively, the "Cash Receipt Accounts") and any Cash Receipt Account(s) subsequently opened pursuant to the Cash Management Order; and (iii) they shall not deposit any additional cash into Account 5966 without the consent of the Agent (as directed by the Required Lenders (as defined in the Term Loan Credit Agreement)).

---

[4]    As used herein, "Cash Management Motion" means the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Maintain Existing Business Forms, and (III) Perform Intercompany Transactions*, filed contemporaneously herewith.

H.    *Sections 506(c) and 552(b)*.  In light of the Agent's agreement, on behalf of itself and for the benefit of each of the Secured Parties, to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral as set forth herein, the Agent and the Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of the Final Order, (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    *Consent by Agent*. The Agent (with the consent of the supporting Secured Parties), on behalf and for the benefit of each of the Secured Parties, has consented to, conditioned on the entry of this Interim Order, the Debtors' proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided for in this Interim Order, including that the Adequate Protection Liens and Superpriority Claim are subject and subordinate to the Carve Out.

J.    *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations and complete a successful chapter 11 reorganization requires the continued use of Cash Collateral. In the absence of the use of Cash Collateral, the continued operation of the Debtors' business would not be possible and cause immediate and irreparable harm to the Debtors, their estates, and their creditors.  The Debtors do not have sufficient available sources of working capital and financing to operate their business in the ordinary course of business or to maintain their property without the use of Cash Collateral.  The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' business and the preservation of their property.  The Agent,

the Secured Parties, and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' business during the Specified Period (as defined below).  Entry of this Interim Order is in the best interests of the Debtors and their estates.

K.      *Good Cause Shown; Best Interest*.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization.

L.      *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Bankruptcy Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested herein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and applicable Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Motion Granted.  The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.      Objections Overruled.  Any objections to the Motion to the extent not withdrawn or resolved are overruled.  This Interim Order shall become effective immediately upon its entry.

3.     <u>Authorization to Use Cash Collateral</u>.

(a)     <u>Specified Period</u>.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the Budget for the period (the "<u>Specified Period</u>") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined herein), (ii) the effective date of a confirmed chapter 11 plan in the Cases, and (iii) the date that is three (3) months after the Petition Date.

(b)     <u>Use of Cash Collateral</u>.  Subject to the provisions of this Interim Order (including the Carve Out (as defined herein)), and in accordance with the Budget, Cash Collateral may be used during the Specified Period by the Debtors to: (i) finance their working capital needs and for any other general corporate purposes; and (ii)  pay related transaction costs, fees, liabilities, and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Cases, in each case solely to the extent consistent with the Budget.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or proceeds resulting therefrom, except as permitted in this Interim Order and in accordance with the Budget.

(c)     <u>Ongoing Cash Deposits</u>.  All collections received (whether by wire or check) by the Debtors from and after the Petition Date shall be deposited by the Debtors in the Cash Receipt Accounts.

4.     <u>Adequate Protection</u>.  The Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the

Prepetition Collateral (including Cash Collateral) to the extent of any Diminution in Value of their interests in the Prepetition Collateral (such adequate protection as set forth in clauses (a)-(e) below, the "Adequate Protection Obligations").  The Agent, on behalf of itself and for the benefit of each of the Secured Parties, is hereby granted, as applicable, to the extent of any Diminution in Value of its interests in the Prepetition Collateral from and after the Petition Date, the following:

(a)    Adequate Protection Liens.  As adequate protection of the interests of the Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of entry of this Interim Order are deemed to have granted, to the Agent, for the benefit of itself and each of the Secured Parties, additional and replacement continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (together, the "Adequate Protection Liens") all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, payment intangibles, chattel paper, contracts, real and personal property, leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, commercial tort claims, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing and any accessions thereto (collectively, together with the Prepetition Collateral and the Cash Collateral, the

"Collateral").  The Collateral shall exclude only any avoidance actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (the "Avoidance Actions"), but, subject to the entry of the Final Order, the Collateral shall include any proceeds of property recovered, unencumbered or otherwise, on account of Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds").  The Adequate Protection Liens granted to the Agent, for the benefit of itself and the Secured Parties (collectively, the "Adequate Protection Liens"), shall be subject and subordinate only to the Carve Out and any existing, valid, enforceable, and unavoidable security interests and liens that are senior to the Term Loan Liens and (i) perfected as of the Petition Date or (ii) perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Existing Liens").  The Adequate Protection Liens shall secure the Term Loan Obligations to the extent of any Diminution in Value of the Secured Parties' interests in the Prepetition Collateral from and after the Petition Date.  The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Except as expressly provided herein (including with respect to the Carve Out), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these Cases or any Successor Cases, or upon the dismissal of any of these Cases or

Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code and, if approved in the Final Order, the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code.  Subject to Paragraph 11 hereof, the Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected first-priority liens (subject only to Carve Out and Existing Liens, if any), not subject to subordination, impairment, or avoidance, for all purposes in these Cases and any Successor Cases. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, mortgages, security agreements, pledge agreements, control agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Prepetition Collateral.  Except as otherwise expressly provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

(b)    <u>Adequate Protection Superpriority Claim</u>.  To the extent of any Diminution in Value of the interests of the Secured Parties in the Prepetition Collateral, the Agent, on behalf of itself and the Secured Parties, shall be granted, subject only to the payment of the Carve Out, allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (collectively, the "<u>Superpriority Claim</u>"), which Superpriority Claim shall be an allowed claim against each of the Debtors (jointly and severally), with priority over any and

all administrative expenses and all other claims against the Debtors now existing or hereafter

arising, of any kind specified in section 503(b) of the Bankruptcy Code, and all other

administrative expenses or other claims arising under any other provision of the Bankruptcy Code,

including, without limitation, sections 105, 327, 328, 330, 331, 503(b), 507(a) (other than

507(a)(1)), or 1114 of the Bankruptcy Code. The Superpriority Claim shall be payable from and

have recourse to all prepetition and postpetition property of the Debtors and the proceeds thereof

(excluding Avoidance Actions, but including Avoidance Proceeds).

(c)     Fees and Expenses.  The Debtors shall pay, within five (5) business days of

delivery of an invoice (which shall include reasonable supporting detail, which may be redacted

to protect privileged or confidential information), all reasonable and documented fees and

expenses of:  (i) the Agent; (ii) Blank Rome LLP, as counsel to the Agent, and local counsel

retained by the Agent; (iii) Gibson, Dunn & Crutcher LLP and Pachulski Stang Ziehl &

Jones, LLP, as counsel to certain supporting Secured Parties; and (iv) Greenhill & Co., LLC, as

financial advisor to certain supporting Secured Parties.  Payment of all such fees and expenses

shall not be subject to allowance by the Court and such professionals shall not be required to

comply with the U.S. Trustee fee guidelines; *provided*, *however*, that any party submitting fees

and expenses pursuant to this Interim Order shall promptly provide copies of its invoices to the

U.S. Trustee and counsel to the Committee appointed in the Cases, if any, and the Court shall have

exclusive jurisdiction over any objections raised by the Committee or the U.S. Trustee to the

invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised

within ten (10) days after delivery of an invoice(s) therefor and shall be limited to the issue of the

reasonableness of such fees and expenses.  In the event that within ten (10) days from delivery of

such invoices the U.S. Trustee or counsel to the Committee raises an objection to a particular

invoice, and the parties are unable to resolve such objection, the Court shall hear and determine

such dispute.  If such objection is timely received, the Debtors shall promptly pay the portion of

such invoice not subject to such objection, and the Bankruptcy Court shall determine any such

objection unless otherwise resolved by the applicable parties.

(d)    Budget and Variance Reporting.    Attached as **Exhibit 1** hereto and

incorporated herein by reference is a 13-week cash flow forecast for the Debtors (the "Budget"),

including the anticipated uses of the Cash Collateral for such period.  On the final business day of

each calendar week following entry of this Interim Order beginning with the second full week

following the Petition Date, the Debtors will provide the Agent and counsel to the supporting

Secured Parties with an updated Budget for the subsequent 13-week period.  The initial Budget

and each subsequent Budget shall be in form and substance acceptable to the supporting Secured

Parties and each such subsequent Budget shall be deemed to constitute the "Budget" for purposes

of this Interim Order unless counsel to the supporting Secured Parties has notified counsel for the

Debtors in writing within five (5) business days following delivery thereof to the contrary.  In the

event of such notification, the prior approved Budget shall remain in full force and effect.  On the

final business day of each calendar week following entry of this Interim Order, beginning with the

second full week following the Petition Date, the Debtors will also provide to the Agent and

counsel to the supporting Secured Parties a Budget variance report/reconciliation (the

"Budget Variance Report") setting forth in reasonable detail actual cash receipts and

disbursements for the prior week for both the Debtors (collectively, and including, for the avoidance of doubt, the Valu Tech Non-Debtor Affiliates,[5] the "Debtor Group"), and the Debtors' non-Debtor affiliates (collectively, the "Non-Debtor Group") and all variances, in each case on both an individual line item basis and an aggregate basis, as compared to the previously delivered Budget on a cumulative weekly basis commencing with the second full week after the Petition Date, together with a statement confirming compliance with the Budget Covenants set forth below. The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance.  The Debtors shall ensure that at no time any of the following occur (collectively, the "Budget Covenants"):  (i) a positive variance of ten percent (10%) or more from the aggregate of operating disbursements, as set forth in the Budget, to be tested and reported on a weekly basis, with the initial testing date occurring (x) with respect to the Debtor Group, on the second full week following the Petition Date and (y) with respect to the Non-Debtor Group, on the fourth full week following the Petition Date; (ii) a negative variance of fifteen percent (15%) (or, beginning on the fourth full week following the Petition Date, ten percent (10%)) or more from the total receipts , as set forth in the Budget, to be tested and reported on a weekly basis, with the initial testing date occurring (x) with respect to the Debtor Group, on the second full week following the Petition Date and (y) with respect to the Non-Debtor Group, on the fourth full week following the Petition Date; (iii) any Debtor makes any disbursement not contemplated by the Budget (after giving effect to the foregoing variances, and including any transfers of cash from any Debtor to any member of the Non-Debtor Group not expressly authorized under the Budget) without the prior written

---

[5]    As used herein, "Valu Tech Non-Debtor Affiliates" shall have the meaning ascribed to such term in the Cash Management Motion.

consent of the supporting Secured Parties; or (iv) commencing with the February 28, 2020 testing

date, and on each subsequent weekly testing date, the ending cash balance of the Debtor Group

(excluding the Non-Debtor Group) shall not be less than $5,000,000.

(e)    Access to Records.   Upon reasonable notice, at reasonable times during

normal business hours, the Debtors shall permit representatives, agents, and employees of the

Agent and the supporting Secured Parties to have reasonable access to (i) inspect the Debtors'

properties and (ii) all information (including historical information and the Debtors' books and

records) and personnel, including regularly scheduled meetings as mutually agreed with senior

management of the Debtors and other company advisors (during normal business hours), and the

Agent and the supporting Secured Parties shall be provided with access to all information they

shall reasonably request, excluding any information for which confidentiality is owed to third

parties, information subject to attorney client or similar privilege, or where such disclosure would

not be permitted by any applicable requirements of law.

(f)    Right to Seek Additional Adequate Protection.   This Interim Order is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

Agent and the Secured Parties to request further or alternative forms of adequate protection at any

time or the rights of the Debtors or any other party to contest such request.

5.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a)

of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of

this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate

Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such acts as the

Agent may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Agent and the Secured Parties under this Interim Order; and (d) subject to the Carve Out, authorize the Debtors to pay, and the Agent and the Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order; *provided* that, during the Remedies Notice Period (as defined herein), the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect.

6.     Grant and Perfection of Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, enforceability, and priority of the Adequate Protection Liens without the necessity of obtaining or filing, as applicable, mortgages, security agreements, pledge agreements, control agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Prepetition Collateral, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement and any other action required to obtain "control" pursuant to section 9-104, 9-105, 9-106, and/or 9-107 of the Uniform Commercial Code) to grant, attach, validate, or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle the Agent and the Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the Agent is authorized, but not

required, to file, enter into, or record, as it deems necessary or advisable in its discretion, such financing statements, control agreements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filing, mortgages, notices of liens, and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, control agreements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the Agent all such financing statements, control agreements, security agreements, vehicle lien applications, mortgages, notices, instruments, and other documents as the Agent may reasonably request.  The Agent may file a copy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, mortgages, notices of lien, instrument, or similar document.  In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

   7. <u>Credit Bid</u>.  Subject to the requirements of section 363(k) of the Bankruptcy Code, the Agent shall have the right (acting at the direction of the requisite Secured Parties) to credit bid

under section 363(k) of the Bankruptcy Code all or any portion of its claims in connection with a sale of the Debtors' assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; *provided* that the Agent shall be deemed a qualified bidder (or such analogous term) in connection with any such sale.

8.      <u>Events of Default</u>.  The occurrence and continuance of any of the following events, unless waived in writing by the Agent (acting at the direction of the requisite Secured Parties), shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)      the Debtors shall have filed a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to this Interim Order or approved by the Agent (acting at the direction of the requisite Secured Parties) in writing;

(b)      the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the Agent (acting at the direction of the requisite Secured Parties);

(c)      the entry of a final order by the Court, other than this Interim Order or the Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, except as approved by the Agent in writing;

(d)      the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;

(e)      the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against the Agent or any of the Secured Parties relating to the Term Loan Obligations or the Collateral, including any proceeding seeking to avoid or require repayment of any payments to the Agent or any supporting Secured Party hereunder;

(f)      the reversal, amendment, supplement, vacatur, or modification of this Interim Order without the express prior written consent of the Agent (acting at the direction of the requisite Secured Parties);

(g)      the dismissal of any of these Cases or conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in any of these Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(h)      the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

(i)      the failure to make any material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the Agent;

(j)     the failure by the Debtors to perform, in any material respect (or, in the case of Paragraph 3(c) and the Budget Covenants in Paragraph 4(d), in all respects), any of the terms, provisions, conditions, or obligations under this Interim Order; and

(k)     the occurrence of any termination event set forth in Section 12 (other than a termination pursuant to Sections 12.02(c) or 12.05 thereof) of the Restructuring Support Agreement.

9.     <u>Rights and Remedies Upon Event of Default</u>.  Upon occurrence of an Event of Default and following the giving of five (5) business days' notice to the Debtors, the U.S. Trustee, and any Committee appointed in the Cases (the "<u>Remedies Notice Period</u>"), the Agent, on behalf of itself and for the benefit of each of the Secured Parties, may exercise the remedies available to them under this Interim Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtors' right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of this Interim Order and the Loan Documents; *provided*, that, during the Remedies Notice Period, the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Interim Order.  During the Remedies Notice Period, the Debtors may request that this Court order the continued use of Cash Collateral without the consent of the Secured Parties and, if such order is granted, the Debtors may continue to use Cash Collateral during the Remedies Notice Period subject to the terms of this Interim Order or any other order of the Court authorizing the use of Cash Collateral.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right

to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Agent, on behalf of itself and for the benefit of each of the Secured Parties, shall be permitted to exercise all rights and remedies set forth in this Interim Order, the Loan Documents, and as otherwise available at law without further order or application or motion to the Court, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect any amounts payable to the Agent and the Secured Parties pursuant to this Interim Order and apply the same to such obligations, without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.  The delay or failure to exercise rights and remedies under this Interim Order or the Loan Documents shall not constitute a waiver of the Agent's or the Secured Parties' rights thereunder or otherwise.  Notwithstanding the occurrence of the Event of Default, all of the rights, benefits and protections provided to the Agent and the Secured Parties shall survive the termination of this Interim Order due to such Event of Default.

10.     Carve Out.

(a)     Carve Out.  As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to

the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Agent (acting at the direction of the requisite Secured Parties) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Agent (acting at the direction of the requisite Secured Parties) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and upon termination of the Debtors' right to use Cash Collateral by the Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the Agent (acting at the direction of the requisite Secured Parties) to the Debtors with a copy to counsel to the Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date

and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Agent for the benefit of the Secured Parties, unless the Term Loan Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Agent for the benefit of the Secured Parties, unless the Term Loan Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Loan Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in

the amounts set forth in this paragraph 10, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 10, prior to making any payments to the Agent or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Agent for application in accordance with the Loan Documents.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Term Loan Obligations (as defined in the Credit Agreement) or increase or reduce the amount of the Term Loan Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Term Loan Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the

Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     No Direct Obligation To Pay Allowed Professional Fees.  None of the Agent or any of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

11.     Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims.  The stipulations, admissions, and waivers contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their affiliates, and any of their respective successors in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, admissions and waivers contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties in interest, including, without limitation, any Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by

order of the Court (or other court of competent jurisdiction) has properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i) before the earlier of (a) two (2) business days before the date of the hearing scheduled to consider confirmation of any chapter 11 plan of reorganization, (b) except as to any Committee, seventy-five (75) calendar days after entry of the Interim Order, and (c) in the case of  any such adversary proceeding or contested matter filed by any Committee, sixty (60) calendar days after the appointment of such Committee, subject to further extension by written agreement of the Debtors (in their sole discretion) and the Agent (acting at the direction of the requisite Secured Parties), (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"); *provided*, *however*, that if, prior to the end of the Challenge Period, the cases convert to chapter 7, or if a chapter 11 trustee is appointed, the trustee shall have the later of the remaining Challenge Period or ten (10) days, (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding:  (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Agent and the Secured Parties; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Term Loan Obligations (any such claim, a "Challenge"), and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.  Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled):  (a) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any

chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) the Term Loan Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases; (c) the Term Loan Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Agent's and Secured Parties' claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases. If any such adversary proceeding or contested matter is timely filed and remains pending and the cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates. Furthermore, if any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed

in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their

estates, including, without limitation, any Challenges with respect to the Term Loan Obligations,

and a separate order of the Court conferring such standing on any Committee or other

party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or

such other party-in-interest.

   12. <u>Limitations on the Use of Cash Collateral</u>.  Notwithstanding anything herein to the

contrary, the Debtors shall not assert or prosecute, and no portion of the proceeds of the Collateral,

including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall

be used in connection with (a) preventing, hindering, or delaying the Agent's or Secured Parties'

enforcement or realization upon any of the Collateral once an Event of Default has occurred and

after the Remedies Notice Period has expired, (b) objecting or challenging or contesting in any

manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or

enforceability of any of the Term Loan Obligations or Collateral, or any other rights or interest of

the Agent or any of the Secured Parties, (c) asserting, commencing, or prosecuting any claims or

causes of action, including, without limitation, any actions under chapter 5 of the

Bankruptcy Code, against any of the Secured Parties or any of their respective affiliates, agents,

representatives, attorneys, advisors, professionals, officers, directors, or employees, or (d) paying

any amount on account of any claims arising prior to the Petition Date or any non-ordinary course

administrative claims unless such payments are (i) approved by an order of this Court and (ii) in

accordance with the Budget Covenants; *provided*, *however*, that up to $25,000 of Cash Collateral

may be used to pay the allowed fees and expenses incurred solely by any Committee in

investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Credit Agreement (the "Committee Investigation Budget").

13.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

14.    Section 506(c) Claims.  Upon entry of the Final Order, subject to the Carve Out, no costs or expenses of administration which have been or may be incurred in these Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Agent or any Lender or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Agent (acting at the direction of the requisite Secured Parties), and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders.  Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by, the Agent or any Lender upon, the Collateral.

15.    No Waiver of Secured Parties' Rights; Reservation of Rights.  Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any Secured Party's rights with respect to any

person or entity or with respect to any other collateral owned or held by any person or entity.  The rights of the Secured Parties are expressly reserved, and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:  (a) the Secured Parties' rights under any of the Loan Documents; (b) the Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) the Secured Parties' rights to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Parties.

16.    <u>No Liability to Third Parties</u>.  In permitting the Debtors to use Cash Collateral under the terms set forth herein or in taking any other actions related to this Interim Order, the Secured Parties (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to any of the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Agent or the Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

17.    <u>No Marshaling/Applications of Proceeds</u>.    Upon entry of the Final Order, the Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (including the Prepetition Collateral), as the case may be, and proceeds or payments shall be received and applied in accordance with the Loan Documents, notwithstanding any other agreement or provision to the contrary.

18.    <u>Section 552(b)</u>.    Upon entry of the Final Order, the Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

19.    <u>Proofs of Claim</u>.    Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Cases or Successor Cases to the contrary, the Agent and the Secured Parties will not be required to file proofs of claim in any of these Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph E herein shall be deemed to constitute a timely filed proof of claim for the Agent and the Secured Parties.

20.    <u>Binding Effect of Interim Order</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Agent, the Secured Parties, all other creditors of any of the Debtors, the Committee, or any other Court-appointed committee appointed in any Cases, and all other parties in interest and the

respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of any inconsistency between the provisions of this Interim Order and the Loan Documents, the provisions of this Interim Order shall govern and control.  Any payments to be made by any of the Debtors under any order (including any "first day" order) shall be made in accordance with this Interim Order.

21.    <u>Survival</u>.

(a)    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of these Cases; (b) converting any of these Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Cases or any Successor Cases.  The terms and provisions of this Interim Order, including, without limitation, the granting of the Adequate Protection Liens and Superpriority Claim, and the other protections granted to the Agent or the Secured Parties pursuant to this Interim Order, shall continue in full force and effect notwithstanding entry of any such order.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity and enforceability of the Adequate Protection Obligations granted in connection therewith, to the extent consistent with section 364(e) of the Bankruptcy Code.

(c)       Except as expressly provided in this Interim Order, the Adequate Protection Obligations and all other rights and remedies of the Agent and the Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired, or discharged by the entry of an order converting any of these Cases to a case under chapter 7 of the Bankruptcy Code, dismissing these Cases, approving the sale of any Collateral (including any Prepetition Collateral) pursuant to section 363(b) of the Bankruptcy Code, or the entry of an order confirming a plan of reorganization in these Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Interim Order shall continue in these Cases, in any Successor Cases, or in any superseding case under chapter 7 the Bankruptcy Code, and the Adequate Protection Obligations and all other rights and remedies of the Agent and the Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

22.    Final Hearing.  The Final Hearing shall be held on January 22, 2020, at 10:00 a.m., prevailing Eastern Time.  The Debtors shall provide notice of the Final Hearing in accordance with applicable rules.   Any objections or responses to the Motion must be filed on or before January 15, 2020, at 4:00 p.m., prevailing Eastern Time.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or a hearing.

23.    Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

24.    <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

**Dated: December 18th, 2019**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**