```
1                   UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2
                                    .    Chapter 11
3   IN RE:                          .
                                    .    Case No. 19-12680 (KBO)
4   CLOVER TECHNOLOGIES GROUP, LLC, .
    et al.,                         .
5                                   .
                                    .    Courtroom No. 3
6                                   .    824 North Market Street
                                    .    Wilmington, Delaware 19801
7                                   .
                    Debtors.        .    January 22, 2020
8   . . . . . . . . . . . . . . . .      11:00 A.M.

9                       TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE KAREN B. OWENS
10                UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:          Joshua Sussberg, Esquire
                              Matthew Fagan, Esquire
13                            Francis Petrie, Esquire
                              Dan Latona, Esquire
14                            KIRKLAND & ELLIS LLP
                              601 Lexington Avenue
15                            New York, New York 10022

16                            - and -

17                            Dominic Pacitti, Esquire
                              Michael Yurkewicz, Esquire
18                            KLEHR HARRISON HARVEY BRANZBURG
                              1835 Market Street, Suite 1400
19                            Philadelphia, Pennsylvania 19103

20

21  Audio Operator:           Al Lugano

22  Transcription Company:    Reliable
                              1007 N. Orange Street
23                            Wilmington, Delaware 19801
                              (302)654-8080
24                            Email:  gmatthews@reliable-co.com

25  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
```

1   APPEARANCES (Continued):

2   For the Debtors:          Morton Branzburg, Esquire
                              KLEHR HARRISON HARVEY BRANZBURG LLP
3                             1835 Market Street, Suite 1400
                              Philadelphia, Pennsylvania 19103
4
    For U.S. Trustee:         Jane Leamy, Esquire
5                             UNITED STATES DEPARTMENT OF JUSTICE
                              OFFICE OF UNITED STATES TRUSTEE
6                             844 King Street, Suite 2207
                              Lockbox 35
7                             Wilmington, Delaware 19801

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  | MATTERS GOING FORWARD:

2  | First Amended Joint Prepackaged Chapter 11 Plan of Reorganization of
3  | Clover Technologies Group, LLC and Its Debtor Affiliates [Docket No. 121; Filed 1/17/2020]

4  | **Ruling:  13**

5  | Debtors' Motion for Entry of Interim and Final Orders (I)
6  | Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing [Docket No. 8;
7  | Filed 12/17/2019]

8  | **Ruling:  14**

9  | Debtors' Motion Seeking Entry of Interim and Final Orders
10 | Authorizing the Debtors to (I) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) File a Consolidated List of the Debtors' Thirty Largest
11 | Unsecured Creditors, (III) Redact Certain Personal Identification Information for the Debtors' Employees and European Union Member
12 | Countries' Citizens, and (IV) Limiting Notice Required Under Bankruptcy Rule 2002 [Docket No. 17; Filed 12/17/2019]

13 | **Ruling:  24**

14 |

15 | EXHIBITS:                              ID     Rec'd

16 | Declaration of Angela Tsai                      5

17 | Declaration of Richard Morgner                  5

18 | Declaration of Marc Liebman                     5

1      (Proceedings commenced at 11:05 a.m.)

2           THE CLERK:  All rise.

3           THE COURT:  Good morning.  Please be seated.

4           MR. LATONA:  Good morning, Your Honor.

5           THE COURT:  Good morning.

6           MR. LATONA:  For the record Dan Latona of Kirkland

7  & Ellis on behalf of the debtors.  It's a pleasure to be back

8  in front of Your Honor so soon.

9           I am joined in the courtroom today by my

10 colleagues Matthew Fagan and Francis Petrie from Kirkland &

11 Ellis, and Morton Branzburg and Domenic Pacitti from Klehr

12 Harrison.  Also in the courtroom today are the debtor's

13 declarants.  I'd like to introduce Ms. Angela Tsai, the

14 director of corporate restructuring from Stretto, the

15 debtor's claims and noticing and noticing agent; Mr. Richard

16 Morgner, managing director from Jeffries, the debtor's

17 investment banker; and Mr. Marc Liebman, managing director of

18 Alvarez & Marsal, the debtor's restructuring advisor.

19          THE COURT:  Good morning to everyone.  Thank you

20 for those introductions.

21          MR. LATONA:  Of course, Your Honor.  Each of those

22 declarants submitted declarations in support of confirmation

23 at Docket Numbers 114, 115 and 116 respectively.  And at this

24 time the debtors would like to move those declarations into

25 evidence.

1          THE COURT:  Okay.

2          MR. LATONA:  Of course, each of the declarants is

3   in the courtroom today should anyone wish to cross-examine

4   them.

5          THE COURT:  Okay.  Does anyone object to the

6   admission of the three declarations found at Docket Numbers

7   114, 115 and 116?

8        (No verbal response)

9          MR. LATONA:  Thank you, Your Honor.

10         THE COURT:  Hearing nothing they are moved into

11  evidence subject to the parties wishes to cross-examine.

12       (Declaration of Angela Tsai, admitted)

13       (Declaration of Richard Morgner, admitted)

14       (Declaration of Marc Liebman, admitted)

15         MR. LATONA:  Of course.  Thank you, Your Honor.

16         THE COURT:  Thank you.

17         MR. LATONA:  Also in the courtroom today are Mr.

18  Michael Cohen and Matthew Porcelli from the law firm of

19  Gibson Dunn & Crutcher representing the ad hoc group of term

20  loan lenders; Mr. Ira Herman from Blank Rome who represents

21  the term loan administrative agent; and, of course, Ms. Jane

22  Leamy from the Office of the United States Trustee; also Ms.

23  Laura Davis Jones from Pachulski, the ad hoc group's local

24  counsel.

25         Your Honor, the debtors filed an amended agenda

1    this morning at Docket Number 139.  I have a hard copy in the

2    courtroom if you would like, also a hard copy of the

3    presentation currently on the monitor.  If I may?

4         THE COURT:  Sure.  Thank you.  And thank you for

5    changing the hearing time to accommodate my schedule.  I

6    greatly appreciate it.  I had to attend active shooter

7    training, which is not a pleasant thing.  I rather have been

8    here.

9         MR. LATONA:  Understood, Your Honor.

10   Unfortunately, a sign of the times.

11        THE COURT:  Yes, it is.

12        MR. LATONA:  So, again, Your Honor, as I mentioned

13   earlier, it's a pleasure to be back in front of Your Honor so

14   soon.  It is truly an exciting day for the debtors and their

15   employees, the debtor's advisors and all of the debtor's

16   stakeholders as the debtors are poised to execute on the

17   third leg of their restructuring process.

18        As Your Honor is aware, in July of 2019 the

19   debtors and the ad hoc group engaged in good faith and arm's

20   length negotiations regarding the contours of a comprehensive

21   restructuring solution.  Those discussions ultimately

22   culminated in the execution of the restructuring support

23   agreement in late November.  That restructuring support

24   agreement contemplated three prongs of the debtor's

25   restructuring process, both of which you've heard of from Mr.

1  Sussberg at the first day hearing.

2        The first was the acquisition of the Teleplan

3  business which allows the debtor's wireless business to

4  expand their reach internationally, access new Blue Chip

5  customers, thereby diversifying their customer base, and

6  focusing on their core strengths going forward.

7        The second prong of that restructuring transaction

8  occurred shortly before the filing of these Chapter 11 cases

9  which was the sale of the imaging business to Norwest Equity

10  Partners for $215 million dollars.  It resulted in a partial

11  pay-down of the debtor's prepetition term loan of

12  approximately 196 million.

13        Those two steps were the initial operational

14  restructuring of the debtor's business.  And now the debtors

15  are poised to execute on the third step which is the

16  confirmation of this prepackaged plan and approval of the

17  related disclosure statement.  As Your Honor is aware, the

18  debtors came into these Chapter 11 cases with a significant

19  amount of support from their term loan lenders, the

20  restructuring support agreement carried the support of 70

21  percent of the aggregate amount of term loan lenders at that

22  time.  The debtors began solicitation of the plan on December

23  13th shortly before the filing of these Chapter 11 cases, and

24  proceeded with solicitation in accordance with the

25  solicitation order entered by Your Honor at the first day

1  hearing.

2          The voting period closed on January 15th,

3  approximately 33 days after the beginning of solicitation.

4  As of the close, as you will see later, both voting classes

5  voted unanimously to accept the plan.  Also on January 15th

6  the objection deadline passed.  There were no formal

7  objections filed on the docket.  The debtors did resolve

8  certain informal objections, most notably with the United

9  States Trustee, which I will walk through shortly in the

10  presentation.

11          So, what did these voting creditors and interest

12  holders vote on.  The plan today implements a comprehensive

13  balance sheet restructuring which substantially de-levers the

14  debtor's balance sheet by approximately 360 million by

15  equitizing all but $80 million dollars of the debtor's

16  prepetition term loans which will be given back to the ad hoc

17  term loan lenders in the form of the take-back term loan

18  facility.  And because of that material concession by the

19  term loan lenders general unsecured creditors are unaffected,

20  reinstated and unimpaired by virtue of these Chapter 11

21  cases.

22          The plan also provides a recovery to the existing

23  equity holders in the form of new warrants in the reorganized

24  debtor's common stock.  Again, this is the product of months

25  of hard-fought, good faith and arm's length negotiations

1   between the debtors, the term loan lenders, and many of their

2   key stake holders.

3            As set forth in the voting report, Your Honor, you

4   see that both voting classes, Class 3 and Class 7, voted

5   unanimously to accept the plan.  Those voting numbers in

6   Class 3 represent as tremendous amount of participation from

7   the debtor's prepetition term loan lenders greater than 90

8   percent of voting members and total dollar amount voted on

9   this plan of reorganization with every voting creditor in

10  that class voting to accept.  We also had substantial

11  participation from Class 7 existing equity interest voting to

12  unanimously accept the plan.

13           The debtors filed an amended plan at Docket Number

14  121 that makes several changes that resolve concerns from the

15  United States Trustee.  What I would propose to do for Your

16  Honor is walk through those changes briefly to let you know

17  what they were.

18           THE COURT:  Okay.

19           MR. LATONA:  The first change is to two defined

20  terms for release party and releasing party.  After

21  discussing with the United States Trustee the debtors amended

22  and revised their plan to carve-out voters that abstain from

23  voting on the plan, and those who objected and rejected the

24  plan from the debtor's release provisions.

25           The next change was in Article 5(b) and Article

1  7(a).  These are substantially similar changes that provide

2  for holders of claims who are required to file proof of claim

3  as a result of rejected contracts or unexpired leases to seek

4  leave of the court to file a late proof of claim.

5          Lastly, change in Article 8(e) provides that until

6  holders of claims that are riding through the Chapter 11

7  cases are paid in full or as, otherwise, agreed to between

8  such holder and the debtors the release and injunction

9  provisions in the plan will not apply until that time.

10         So, as you can see, Your Honor, with no formal or

11  informal objections unanimous voting classes accepting the

12  plan, general unsecured claims riding through and being

13  unaffected this is truly the result of an overwhelming amount

14  of work and hard hours by everyone in this courtroom, by Your

15  Honor, her staff, but also a number of people who are not in

16  this courtroom who put in long hours and hard work, and

17  definitely deserve to be recognized in connection with this

18  plan and this implementation here.

19         So, unless Your Honor has any questions on the

20  amended plan what I would propose to do is walk through a few

21  of the 1129 requirements.  Most are set forth in the debtor's

22  memorandum, I believe in the Morgner declaration, the Liebman

23  declaration, and the voting report, and the disclosure

24  statement and related exhibits.

25         THE COURT:  That's fine. I have no questions.

1         MR. LATONA:  So, as has been mentioned, at the

2    first day hearing, on the record here and in all of the

3    debtor's confirmation pleadings the plan is truly the result

4    of an overwhelming amount of consensus, hard work and good

5    faith resulting in the culmination of all three restructuring

6    steps including the Teleplan acquisition, the imaging sale

7    and the confirmation of the prepackaged Chapter 11.  And as

8    set forth in the Liebman declaration, the debtor's memorandum

9    and the disclosure statement liquidation analysis.  This is

10   truly the best outcome for all creditors of the debtor's

11   capital structure, and all of their stakeholders.

12        As mentioned in the liquidation analysis, each

13   holder under this plan is receiving significantly more than

14   it would if the debtors were to liquidate in Chapter 11.  In

15   fact, were we to go into a Chapter 11 general unsecured

16   creditors would likely not receive any too little recovery.

17        Lastly, as set forth in the debtor's confirmation

18   pleadings and the financial projections, as part of this

19   transaction and substantial deleveraging, and also by virtue

20   of the debtor's Teleplan acquisition and imaging sale,

21   allowing both of those businesses to focus on their core

22   strengths going forward the debtor's wireless business here

23   is optimizing their capital structure, streamlining their

24   operations and are poised to execute on their business plan

25   on a go-forward basis and truly achieve success as a result

1    of all this hard work by the debtor's management, by the

2    debtor's stakeholders and advisors.

3           So, unless Your Honor has any questions we would

4    respectfully submit that the disclosure statement be approved

5    as having adequate information and the plan be confirmed.

6           THE COURT:  Okay.  Does anyone else wish to be

7    heard in connection with the debtor's confirmation and

8    disclosure statement order?

9        (No verbal response)

10          THE COURT:  Okay.  Having heard nothing, I have

11   reviewed the plan and related documents, and based on the

12   record, including the three declarations that were moved into

13   evidence today, and the presentation, of course, that was

14   just made in support of confirmation and approval of the

15   disclosure statement, I am prepared to approve the disclosure

16   statement and confirm the plan today, and enter the

17   confirmation order; however, I do have one requested change

18   to the form of confirmation order that was submitted.

19          MR. LATONA:  Of course.

20          THE COURT:  On Page 14, Paragraph 30 I'd like you

21   to remove that paragraph.  I am prepared to approve the

22   third-party releases today on the record that was presented;

23   however, I am note prepared to enter the form of order with

24   this paragraph in the confirmation order.  I don't think you

25   need it.  You can correct me if I'm wrong, but I would like

1  you to remove it.

2           MR. LATONA:  Of course, Your Honor.  We will

3  revise and submit a revised proposed order shortly after.

4           THE COURT:  Okay.

5           MR. LATONA:  Thank you, Your Honor.

6           THE COURT:  Thank you.

7           MR. LATONA:  At this time I would like to cede the

8  podium to my colleague, Mr. Petrie.  He will address the

9  remaining items on the agenda.  I'd like to thank you again

10  for your time.

11           THE COURT:  Thank you.

12           All right. Good morning.  I think we have, what,

13  cash collateral and the creditor matrix motion left?

14           MR. PETRIE:  Correct.  I will be representing the

15  balance of the agenda which has now become quite truncated

16  thanks to your Chambers entering almost everything yesterday

17  on CNO or COC.

18           THE COURT:  Thank you for uploading those orders.

19           MR. PETRIE:  Of course.  Thank you for entering

20  them.

21           So, the first item I will be taking up is the

22  debtor's final cash collateral order which is Number 13 on

23  the agenda.  This order represents the consensual agreement

24  to use the lenders cash collateral that was described in

25  detail at the first day hearing.  It contains comments from

1  parties in interest.  The form of proposed order has been

2  circulated and filed publicly, and has garnered no

3  objections.  All of the changes in the redline reflect the

4  fact that this is now on a final basis.

5          Does Your Honor have any questions?

6          THE COURT:  I do not.  Does anyone else wish to be

7  heard in connection with the final cash collateral order?

8      (No verbal response)

9          THE COURT:  All right.  Hearing none I am prepared

10 to -- I have reviewed the revised proposed form of order and

11 based on the record that was made in connection with the

12 first day hearing I am prepared to enter the revised proposed

13 form of order. If it's been uploaded I will do so after the

14 hearing today.

15          MR. PETRIE:  Thank you, Your Honor.

16          So, Your Honor, with that we have reached the only

17 contested matter on today's agenda and in these cases thus

18 far which is the creditor matrix motion which we seek to have

19 entered on a final basis.

20          That issue is only one component of the relief

21 requested which is the redaction of the personal identifiable

22 information on the publicly filed matrix.  Your Honor, I will

23 be quick with this.  We filed a reply to the U.S. Trustees

24 objection and we believe we have laid out our position in our

25 papers in detail.

1        To summarize the debtor's position, through this

2    relief the debtors are seeking to protect the physical and

3    financial safety of their employees and other individuals by

4    keeping their personal home addresses redacted exclusively on

5    the public version of the creditor matrix under Section

6    107(c) and other privacy laws.

7        Consistent with the discussion at the first day

8    hearing, through our reply, we sought to supplement the

9    record with a description of the consequences of filing an

10   un-redacted matric.  In addition, we filed the declaration of

11   Marc Liebman in support of the relief requested which is

12   attached to our reply as Exhibit A, Docket Number 113.  Mr.

13   Liebman is present in the courtroom and at this point if it

14   would please the court we'd like to ask Your Honor to admit

15   the declaration of Mr. Liebman into evidence.

16       THE COURT:  Does anyone object to the admission of

17   the declaration of Mr. Liebman?

18       MS. LEAMY:  No objection, Your Honor.

19       THE COURT:  All right.  It's entered into evidence

20   subject to parties who wish to cross-examine.

21       MR. PETRIE:  Thank you, Your Honor.

22       So, Your Honor, as demonstrated in our papers, the

23   side effects of publishing home addresses on the internet are

24   dangerous and real.  We provided examples of the ways in

25   which people are put at risk.

1          First, with a simple Google search a stalker or

2   domestic abuser can locate their victim who likely has no

3   idea that their information is now public.  Identity thieves

4   can official data mine information on thousands of people at

5   once and there are commercial side effects for the company as

6   well.  First, there is the potential for poaching of the

7   company's skilled employees as well as an enormous fine from

8   the European Union if we compromise their citizens' personal

9   information.

10          We have engaged in discussions with the U.S.

11   Trustee and their stance surrounds transparency in the

12   bankruptcy process.  We'd like to emphasize that there is no

13   dispute that transparency is essential to Chapter 11, but our

14   requested relief does not compromise that goal.

15          An un-redacted version of the matrix was provide

16   to the U.S. Trustee and to the court, and if any party in

17   interest had made a request for an un-redacted matrix we

18   would have sent one provided that it was related to these

19   Chapter 11 cases and not for an improper purpose.  Our

20   proposed relief is very narrow and public access is preserved

21   by the methods that we have utilized.

22          Our proposed order does this through a method that

23   does not have dangerous side effects as well.  These

24   prepackaged Chapter 11 cases, which I note Your Honor has

25   already confirmed, signify that every individual on the

1  matrix, whether they are employees or other creditors, are

2  being paid in full or their interest will be riding through

3  unimpaired.   There is simply no reason now to put these

4  people at risk.

5         Courts in this district regularly grant this

6  relief and have recognized the danger of having personal

7  information public and easily accessible in the year 2020.

8  Your Honor has authorized redaction on a matrix in the past.

9  The relief requested here is no broader then what this court

10  granted in Celadon last month.

11         So, that summarizes the debtor's position.   Does

12  Your Honor have any questions?

13         THE COURT:   Let me ask you this question, why

14  aren't you seeking to redact all of the individual's home

15  addresses?

16         MR. PETRIE:   So, actually, I was going to say that

17  as well.   We would submit a revised proposed order that -- I

18  understand that the order that was submitted to the court

19  called out employees and European Union citizens I was going

20  to suggest that we change the defined term to encompass all

21  individuals including those who aren't active employees or

22  former employees.

23         THE COURT:   All right.   So, that's the scope of

24  the relief that you seek?

25         MR. PETRIE:   Correct.

1           THE COURT:  Okay.

2           MR. PETRIE:  I --

3           THE COURT:  Sorry to cut you off.  Please

4   continue.

5           MR. PETRIE:  -- was going to ask if you had any

6   other questions.

7           THE COURT:  I do not.

8           MR. PETRIE:  Okay.  So, with that I will turn the

9   podium over to Ms. Leamy.

10           THE COURT:  Okay.  Thank you.

11           MS. LEAMY:  Good morning, Your Honor.

12           THE COURT:  Ms. Leamy, how are you?

13           MS. LEAMY:  Thank you.  Jane Leamy for the U.S.

14   Trustee.

15           Fortunately, we're the fly in the ointment here

16   causing this to be a non-consensual hearing.  In any event,

17   Your Honor, we start with the presumption of public access to

18   court records.  The bankruptcy rules require a matrix be

19   filed with the court at the start of the case containing the

20   name and complete address of each creditor.

21           I acknowledge this is a prepack case.  Creditors

22   are being paid in full, but until they are paid in full I

23   suppose they're still a creditor in the case.  So, that is

24   why we are here today.

25           The other issue Your Honor had just asked a

1   question about that, and I did want to address it.  The

2   motion that was filed in this case on the first day and the

3   interim order that was entered only addressed employees.

4   When I saw the debtor's reply it appeared that they were

5   trying to expand the scope to all individual creditors and

6   the declaration that was filed at Docket 113 with the reply,

7   the declaration of Marc Liebman at Alvarez & Marsal, at

8   Paragraph 5 indicates that the creditor matrix lists over

9   9,000 creditors including approximately 240 employees, so,

10  it's a pretty limited scope of employees, approximately 7,000

11  individual creditors and interest holders, and approximately

12  10 individuals whose addresses are EU citizens.

13          So, it appears that the vast majority -- and if

14  you look at the matrix that has been filed the addresses are

15  redacted.  So, it's not clear to me why the debtors seek to

16  expand so greatly the scope of redactions.  I am not sure

17  that they have met their burden with respect to that.

18          Your Honor, 107 does allow sealing and

19  specifically 107(c) provides that the court may protect an

20  individual with respect to the following types of information

21  to the extent the court finds disclosure of such information

22  would create an undue risk of identity theft or other

23  unlawful injury.  And included in that is any means of

24  identification.  Section 102(a)(d)(7) of Title 18 defines

25  what means of identification is.  It doesn't exclude

1  addresses, but it specifically delineates names, social

2  security number, date of birth, et cetera.

3          So, our position is that mailing addresses because

4  they are not enumerated as a means of identification means

5  that they can't be disclosed; although, we do acknowledge

6  that Your Honor in prior cases and other judges have allowed

7  redaction and have said that because its including it it's

8  not exclusive.

9          A lot of this information is probably already in

10  the public domain.  Internet searches can find it especially

11  with respect to the customers or an individual creditor as

12  opposed to the employees.  I think it's a little more

13  attenuated.  Parties or the debtors have made the argument

14  that, you know, if there is a particular individual that, you

15  know, may be at risk of identity theft or stalking they want

16  to protect their address.  And somebody may make the

17  connection that they're employed by Clover, I'm going to look

18  at the docket, I'm going to get the matrix.  For a customer I

19  think it's more attenuated. Somebody is not going to

20  necessary know this person was a customer of Clover and I'm

21  going to go look up their address on the docket.  So, I think

22  there is less reason for redaction for those individuals.

23          Again, Your Honor, we would ask you to focus on

24  the undue risk.  I don't think the debtors have identified

25  here anything different from other cases where this

1  information has been disclosed.  Certainly, we are not

2  opposed to redaction for any one that they specifically

3  identify where there is a risk.  In other cases we have

4  consented to, obviously, patient information being redacted

5  due to HIPPA concerns, minors have also been permitted to be

6  disclosed.

7       Your Honor, if I could just briefly address the

8  European issue, European Union citizenship issue. I think

9  it's very limited here.  The declaration identifies probably

10  only in the matrix 10 individuals.  So, I don't want to spend

11  a lot of time on it.  I'm not an expert on the GDPR that is

12  now the General Data Protection Regulation.  I just want to

13  highlight a few things.

14       The GDPR protects the disclosure of personal data

15  which is any information relating to an identified or

16  identifiable natural person.  We acknowledge that the debtors

17  are rightfully concerned that there is the risk of potential

18  fines; however, we think that there are couple reasons why,

19  you know, they shouldn't be concerned with that.

20       First, there is a legal claim exception where the

21  transfer is necessary for establishment, exercise or defense

22  of legal claims.  Here, you know, the debtors have filed a

23  bankruptcy case and they're required by the rules to file a

24  matrix with the creditors name and address.  So, we think

25  that that protects them here.

1      Second, the bankruptcy code is the controlling law

2  here not the GDPR.  So, the court may not be bound by the

3  GDPR and, you know, this court's interest in enforcing the

4  bankruptcy code is superior to the GDPR.

5      So, Your Honor, we would request that the court

6  decline the request to redact.

7      THE COURT:  Okay.

8      MS. LEAMY:  Thank you.

9      THE COURT:  Thank you, Ms. Leamy.

10      MR. PETRIE:  Your Honor, may I reply to some of

11  those arguments?

12      THE COURT:  Absolutely.

13      MR. PETRIE:  Okay.  Just in response to Ms.

14  Leamy's arguments, first, the point that the means of

15  identification doesn't contain mailing addresses it does

16  contain -- the defined term, first, is not meant to be

17  completely inclusive.  Secondly, it does include a driver's

18  license.

19      As noted in a prior case in front of Judge Gross,

20  the real pertinent part of a driver's license that we want to

21  keep from the public is not their height, weight or anything

22  like that; it is their home address.

23      THE COURT:  Speak for yourself.  I don't want

24  someone to know my weight.

25      (Laughter)

1          MR. PETRIE:  Yes.  That also not an inclusive

2   list.  We would like to keep that out the public sphere.

3       (Laughter)

4          MR. PETRIE:  So, we don't believe that that

5   argument really carries the day here.

6          Further, I do think that the argument that the

7   creditors and individuals that aren't employees actually cuts

8   the other way.  They are attenuated relationship to the

9   company actually makes it less likely that they're aware that

10  their information is being publicly disclosed and we have

11  gotten a lot of calls from stakeholders who are wondering

12  about their relationship to these cases.

13         Further, these dockets -- while the creditor

14  matrix on the claims agent website is search engine

15  optimized, so Googling these people could just have it come

16  up really regardless of whether somebody was specifically

17  looking for the creditor matrix on the docket.

18         On the GDPR points, as noted by Ms. Leamy, none of

19  us in the courtroom are experts on this.  The danger for

20  these fines, which are enormous up to 20 million euro, are

21  not something that we think the estate should bear in some

22  sort of risky experiment taking exercise.

23         Further, I know that there is a necessary test for

24  this information to be released.  I don't see how that test

25  would be met here especially since we have completely

1   administered the entirety of this case and given notice. To

2   say that this information needed to be in the public sphere

3   in order to reach confirmation is an argument that I don't

4   think would carry the day.  Judge Gross actually noted in

5   Forever 21 that he does not believe it to be necessary as

6   well.  Even the risk of those fines is not something that we

7   hope that our stakeholders or these estates should bear.

8          So, for those reasons we ask you to enter the

9   proposed form of order.

10          THE COURT:  Okay.  Well, I am prepared to enter

11  the proposed form of order with a few minor modifications and

12  I will overrule the U.S. Trustees objection as I have done

13  in, at least, two cases thus far; West Lake, which was a

14  Chapter 7 case, and you mentioned Celadon.

15          As I have held before I do find that names and/or

16  addresses are a means of identification. The combination of a

17  name and address to me is a means of identification under

18  Section 107(c) -- excuse me, 28 U.S.C. 1028(d)(7).  I do find

19  there is an undue risk under 107(c) to redact the creditor's

20  matrix.

21          To me it is common sense.  I don't need evidence

22  that there is, at best, a risk of identity theft and worse a

23  risk of personal injury from listing someone's name and

24  address on the internet by way of the court's electronic case

25  filing system and, of course, the claims agent's website.

1   The idea that a person needs to connect Clover or

2 the name of a debtor with an individual's name and then the

3 address I think misses the mark on how internet searches

4 work.  If somebody wants information about someone they just

5 type the person's name on the internet.  If data miners want

6 to collect address information they just simply pull the

7 creditor's matrix.  This occurs on a fairly frequent basis

8 based on my understanding and experience.

9   The court can completely avoid contributing to the

10 risk by redacting the addresses.  And while there is, of

11 course, an important right of access we routinely redact

12 sensitive and confidential information for corporate entities

13 and redact individual's home addresses.  I find it quite

14 puzzling that the Office of the United States Trustee -- and,

15 Ms. Leamy, this is a comment not directed to yourself, but to

16 the Office of the United States Trustee that they have chosen

17 to challenge these requests targeted at protecting

18 individuals.

19   As the Supreme Court has acknowledged, courts have

20 the power over their records and files, and maybe deny access

21 to those records and files to prevent them from being used

22 for an improper purpose.  To that end I am prepared to do so.

23   Individuals, of course, do not object and I don't

24 believe they would ever object to the redaction of their

25 addresses from the internet; that goes without saying.  It

1  also goes without saying that they have not consented to the

2  sharing of this information.  If they submit a proof of claim

3  that could be seen differently.

4          Moreover, where is the prejudice to the

5  administration of these cases or to the participating

6  parties.  I cannot fathom a use or, excuse me, a meaningful

7  bankruptcy use for this information other then, perhaps, a

8  venue transfer motion and, of course, notice and

9  solicitation, but given the debtor's representation that they

10  would share the addresses if the requesting party wants them

11  for a bankruptcy purpose then this concern to me is rendered

12  moot.

13          Like I said, I am prepared to enter the debtor's

14  request and I will expand it to all individuals addresses,

15  not just employee addresses and those European Union

16  citizens, but I do want you to build in a mechanism whereby

17  parties are able to file a motion to request the information

18  that's been redacted and given them the opportunity to tell

19  me why they want it.

20          I think that strikes a fair balance between public

21  access and the privacy concerns associated with such a far

22  reaching public disclosure of the individual's name and

23  address information.

24          MR. PETRIE:  Thank you, Your Honor.  We will build

25  those procedures in and submit a revised proposed order to

1  the court.  We will also run those past the Office of the

2  U.S. Trustee to see if they have anything to contribute.

3           THE COURT:  Thank you.  I would appreciate that.

4           MR. PETRIE:  Thank you, Your Honor.

5           That brings us to the end of today's agenda.  We

6  would like to just repeat a thank you to you and your Chamber

7  staff for helping us with this and accommodating us on such

8  short notice for this case, and for the truncated timeline

9  that we had.  For everyone in the courtroom we would just

10  like to reiterate our thanks for helping us reach this

11  outstanding conclusion.

12          THE COURT:  Congratulations to you all.

13          MR. PETRIE:  Thank you very much.

14          THE COURT:  It seemed to be a momentous task and

15  you accomplished it.  You're my second confirmed case and it

16  was a pleasure, a quick pleasure, but I'm sure I will see you

17  again soon.

18          We will stand adjourned.  Thank you.

19      (Proceedings concluded at 11:35 a.m.)

20

21

22

23

24

25

1          CERTIFICATE

2

3    I certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6    /s/Mary Zajaczkowski_____          January 22, 2020
7    Mary Zajaczkowski, CET**D-531

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25